The opinion of the Court was delivered by

Mr. Justice Johnson,

Amongst the cases enumerated in the 7th sec. of the insolr vents debtor’s act, pub. laws, 251, is that of the defendant’s being in custody on a recovery'for a wilful and malicious trespass, or to use the words of the act, “ no person or persons shall he entitled to the benefit of this act, who shall be sued,, impleaded or arrested for damages recovered in any action for wilful maihem or wilful and, malicious trespass,” &c. and the evidence offered was intended to prove that the injury for which this action was brought fell with the class, and its admissibility gives rise to the first ground of the motion. By way of testing its admissibility, let the question be asked,for what cause is the defendant hi custody? The' answer must be, that it is the consequence of the recovery against him; and this recovery is founded on the case stated in the record. Independently of this deduction, there are other considerations Which clearly exclude any other evidence. There would be no possibility of attaining any thing like certainty, except by trying the whole case de novo, and even then, it must remain uncertain whether tlie damages found were predicated on the precise state of the facts developed in this new investigation. If the record is once departed from, there is no limitation, as the plaintiff would be at liberty to go into proof of any other injury, however foreign to the action in which the damages were found. The evidence tendered on this point was, therefore, clearly inadmissible.
Regarding this as an action on the case, and confining théL *107 •plaintiff to the record for the evidence of its character, it has not been insisted that the defendant is excluded from the.benefit of -the act; and such an ideá is clearly excluded by the opinion of the court in the case of Walling vs. Jennings, 1st. M'Cord 10; which belonged to the same class, that the defendant was entitled to the benefit of the act.
2d. The insolvent debtors’ act contains no provision for ihe admission of persons confined on civil process to the prison rules; but it is provided for in the 7th clause of the act usually called the prison’s bounds act, Pub. Latvs, 457; by which it is enacted, that no person “shall be discharged without fully satisfying the action or execution -in which he or she is confined, if since his or her confinement, and before he or she gave security as aforesaid, he or she has been seen without the prison walls, or if since his or her giving sueh security, he or she has been seen without the prison .rules, without being legally authourised to do so.” On the part of the defendant, it was contended that this clause of the act was not intended to apply to persons claiming the benefit of the insolvent debtors act, hut exclusively to those applying for the bene= fit of the prison bounds act. In the case of Peck vs. Glover, 1st Nott and M'Cord, 582, it is remarked, perhaps more generally than was justifiable, and certainly more so than was necessary to the case, that this clause applied exclusively to cases under the insolvent debtors’ act. That case turned upon the question whether a bond given by a person confined on mesne process could, if broken, he assigned to the plaintiff, and the first member of the section under consideration only provides for-the assignment of a bond given by one confined in execution; so that its applicability was not necessarily involved; and upon looking into both the acts, it will be clearly seen, that as applied to this question it must be retained as indispensably necessary to both; for without it, many of their most important pro-' visions would be wholly defeated. To return to the question made in the second proposition: If a literal construction was to be adopted, it would seem rhat the fact of being without the prison walls or bounds would, per se, exclude the defendant from the benefit of the act; but its operation would be so unreasonably that it would lose its, influence as a law... According’ *108 to this construction, if the prison should be on fire, the debtor must either elect to perish in the flames or sutler perpetual im*-prisonment;' or if he should be carried beyond tiie vines by force or accident, over which he had no control, he must pine out his existence in the four walls of the jail: and on the other hand, it would be destructive of the objects of the act, if he was per--mitted to go without and return at liis pleasure. As the best ineans of guarding against these extremes, it appears to me that a defendant’s right to the benefit of the act ought to be tested by the issue, whether his being without the rules was voluntary, Or the result of causes which he could not control. If the former, sound policy would exclude him from it; if the latter, justice, and humanity strengthens his claim to them.. The evidence on this point having been excluded, the court are una ble to make the application; we think, however, that it ought to have been admitted, and that its influence ought to have been determined on the foregoing principles. . .
3d. The third question is founded on the 15th clause of the insolvent debtors’ act, which .excludes a debtor from, its benefits who “ shall conceal any part of his estate, and not make a full surrender and delivery thereof,” &zc. it was contended that this provision would be wholly defeated, if on being detected in an attempt to conceal or keep back a part of his estate, the defendant should be at liberty to shelter hirnself under the privileges of an amendment, and thereby escape the penalties imposed. To this it is with great propriety replied, that a construction which would incarcerate for ever an unfortunate debtor, who, intending to deliver up bis all to his creditors, had, from one of those casualties or inadver-tencies to which the whole human family are exposed, omitted in his schedule some unimportant article of property, would be too narrow and illiberal for practical purposes. Such undoubtedly would be the consequences of this mode of construction, apd hence the necessity of the practice which has been sanctioned by repeated adjudications, of permitting amendments even after the schedule was filed. It ought not, however, to he indiscriminately admitted, as in its consequences the result ap* prehended might be realized; and it appears to me that the only @2*o footing on which it can be put, is to throw on the applicant *109 the burden of showing satisfactorily that the omission was not-designed to effect a fraudulent concealment, or to give some other reasonable, account why the property was not included.
Grimkc, for the motion.
Furman, contra.
4th. The only remaining question is as to the legality of discharging the defendant without oath. This was not claimed as a privilege by the defendant, hut originated with the court. It was supposed that the same policy which excludes persons of color from giving evidence, would operate so as to exclude them-from taking an oath in any case. As a mere matter of policy,, it was always within the control of the legislature, and taking the oath prescribed by the act is made a condition, sine qua non„ to entitle him to its benefits. There is no exception, and to carve out one for this case, would he to destroy one of the securities provided for in die act, as a guard against fraudulent con-cealments. The court are of opinion, therefore, that the defendant ought not to have been discharged without taking the oaths
Huger, JYott, Justices, concurred,